Harper, Ch.
Samuel Todd, deceased, by bis will, bequeaths as follows: “ I give to my nephew, Samuel R. Todd, (son of my brother Andrew,) all my stock in trade at Laurens Court House; the notes and book accounts there owing to me, and a negro man named Bob.” There is no residuary disposition by the will, and the complainants claim the residue, as the next of kin and dis-tributees.
At the time of his death, besides the goods belonging to his trading establishment at Laurens Court House, the testator left his books on which accounts were due, and a number of single bills, in the form of promissory notes, but under seal, taken in the course of his mercantile dealings. It was agreed, at the hearing, that all the notes taken by the testator himself, were under seal. This was his habit of business. The defendant, Samuel B. Lewers, the executor, admitted that there might have been some notes not under seal transferred to his testator, which he had collected, but he did not know or recollect that such was the fact. The testator also left in the desk of his commercial establishment, a promissory note (not sealed) of James Brannon, of a considerable amount, not founded on any of his mercantile dealings. He had also recovered many judgments on account of debts due to his commercial establishment. The questions are, whether these single bills pass under the bequest set forth ; whether the judgments pass, and whether James Brannon’s note passes.
I shall first enquire as to the meaning of the words, “stock in trade,” and next, as to the eifect of the words, “ notes and book accounts.” It is observed by Roberts, in his treatise on Wills, 1 Vol. p. 369, “with respect to the words ‘stock in trade,’ *464 what shall be comprehended in these terms, must always, in a great measure, depend upon evidence of intention, intrinsically or extrinsically collected; but, where- there is nothing peculiar in the case to determine the import of the phrase, the popular and usual understaxiding of the words must govern their interpretation.” It seems to me, that what constitutes stock in trade, must, in general, be a question for extrinsic evidence, and is a proper subject of reference. I shall direct a reference in this case, and, in the mean time, throw out such ideas as may be a guide to the Commissioner in his investigations.
It was urged, that the popular meaning of the words “stock in trade,” is the stock of goods on hand at any particular time. I am aware, that among traders, the goods on hand are designated as “ stock;” but I cannot think, that in the general understanding, the terms “stock in trade” embrace no more than this. Nor do I think it can make any difference, if the practice of merchants in paying the tax imposed on “ stock in trade” be to estimate only the goods on hand. Men are easily led, in any particular instance, to define words according to. the bias'of their interests. In general, I think the words must be taken to mean the whole capital employed in the trade — everything that is appropriated or necessary to the carrying on of the trade. If the party using the words were a member of a commercial firm, I suppose they would, in general, signify his interest in the firm. If the terms of the partnership were to employ a certain stated capital and to divide profits annually, the capital would constitute the stock in trade, and I suppose, that any profits that had accrued at the testator’s death, would not pass under the words. If the terms were to reinvest the profits in the trade, I suppose that everything — the original capital and the profits, would remain stock in trade, till any part were actually withdrawn. There may be more difficulty in the case of an individual. An individual might set apart a certain specific capital for the purposes of trade, withdrawing the annual profits to be employed or vested otherwise. In this case, I should say only the original capital constituted the stock in trade. But, if his practice *465 were, to make' no distinction between profits and capital, but to reinvest all the proceeds-in the trade, then I should say that every thing, goods, shop furniture, cash on hand, debts, whether by note, book account, bond or judgment, were part of the stock, in trade. " -But, still it would- be in his power to -withdraw any part of the funds or property from the trade; and by whatever means, he should signify his intention, of doing so, that which was so withdrawn, would no longer constitute part of thé stock in trade! If,' as was suggested in argument, the merchant should purchase land with money, or with a note -or bond, arising from his trade, this would be clearly a withdrawing it from his stock. The same intention might be signified in infinitely various ways; as, perhaps, if for a debt due, the merchant should take a bond payable at a distant day, out of the usual course of trade, with interest payable annually, this might be a sufficient signification of his intention to invest part of his capital in that way, and to withdraw it from the trade. - ‘
I have been surprised to find so little authority on the subject of what constitutes stock in trade. So far as I can find any, however, it seems to support the view I have taken.' In the case of Stuart vs. Bute, 3 Ves. 212, the testator devised all his wagon 'ways, rails, staiths and all implements, utensils and things used or employed, together with, or in, or for the working, management or employment of his collieries, and which may be deemed of the nature of personal estate. There were several references to the Master, to enquire what the articles bequeathed were, and what was necessary for carrying on the colliery. He reported, among other things, a balance of money, £5512 19s. 6Jd., which the Coal Mining Company had in the Tyne Bank; £656 17s. 4d. money in the hands of the Cashier; balances due from several persons, £5642 10s. 10d., and coals at the pit to the value of £2899 17s. 8d. The questions were with respect to these monies and coals. Lord Rosslyn decided that they passed under the bequest. He grounds his opinion chiefly upon the fact, that the same collieries had been disposed of in terms nearly similar by the will of Mr. Wortley, the father-in- *466 law of Lord Bute, and that it had been held in a former suit, (2 Eden, 87; 5 Bro. Par. Ca. 534) that similar balances of money passed. Lord Bute acquired them under a sale made by authority of that win, and Lord Rosslyn thought he intended to dispose of them as he acquired them. On a petition for rehearing before Lord Eldon, 11 Yes. 657, it was argued, against Lord Rosslyn’s decision, that by the terms of Mr. Wortley’s will (as indeed appears in the case) “all his stock in the coal trade” was bequeathed; and it was conceded, that if these words had been used, everything must have passed. Lord Eldon says the point did not arise in the former case — and if it had, it would have been of no authority, as the words of the two wills were different. He speaks doubtfully, but confirms Lord Rosslyn’s decree. So, where the “stock” of a farm was bequeathed, it was held that corn growing at the testator’s death passed. Cox vs. Godsalve, 6 East, 604, n ; West vs. Moore, 8 East, 339. This must have been on the principle, that the term included everything on the farm that was proper and necessary for carrying it on. The uhcertain and fluctuating nature of the bequest, if it were confined to goods on hand, is another argument against so restricting it. It might amount to much or almost nothing, as the testator happened to die just before or after-laying in the usual supply of goods.
I have already said, that if the testator’s practice was to make no distinction between profits and capital, but reinvest the proceeds of the trade, everything would be included that was not shown to have been withdrawn from the trade, including debts of every sort. It is most probable, that this was the nature of the trade, but it does not clearly appear, and must be enquired of on the reference. I suppose the books will show. If this was the case, then it will follow, that if the words “stock in trade” had stood alone, the notes and judgments in question must have passed. But, as the “notes and book accounts” bequeathed, were part of the stock in trade, I must take these as qualifying and explaining the former words. I have no doubt as to the sealed notes. The words “ stock in trade ” and “notes” *467 must be taken together. The notes intended are those which constituted a part of the stock in trade. What the stock in trade was, is a matter to be enquired of by extrinsic evidence. It is agreed, that there were no notes constituting a’part of the stock in trade, but those sealed ones ; or, if there were, it was only accidentally, and not in the ordinary course of business. Such instruments are known by that name, though it is not the most obvious and appropriate one ; and I certainly cannot think the enumeration of “notes” sufficient to exclude these instruments. So, any ready money on hand, under the circumstances, would be part of the stock in trade.
I am inclined to think differently with respect to the judgments ; though my opinion is not so decided, but that I shall reserve it for the coming in of the report. The testator, after using the words “ stock in trade,” probably added the words “ notes and accounts,” from some feeling of doubt whether these would pass without being specified. He knew, of course, that the goods would pass. The question is, whether having specified two kinds of debts, a third, not specified, will pass. In the case of Stenhouse vs. Mitchell, 11 Ves. 352, the bequest was of all debt, “ whether by bond, mortgage or open account.” The testator had judgments which he had recovered on bonds : and the question was, whether these passed. It was argued that all debts were bequeathed; that the word “whether” made the case different from what it would have been, if the testator had said “all debts by'bond, mortgage or open account.” Lord Eldon, though believing that the testator intended every kind of debt to pass, thought he was not authorized to give that effect to these words of the will. He afterwards decided in favor of the legatee, on a subsequent clause giving all debts due at a particular day. Now, I do not perceive that the bequest in the present case would have been different, if the testator had said, “ my stock in trade and all debts due by note or open account.”
From what I have said, it will also follow that I think Bran-non’s note will not pass. The words “notes and book accounts,” refer to and qualify the previous words, “stock in *468 trade.” They all have reference to the testator’s commercial establishment at Laurens Court House. Brannon’s note, though found in a desk there at his death, had no other connection with that establishment, and was not given on account of any dealings there.
Another question was made. Several of the debtors of the commercial establishment had counter demands, forming matter of set-off, and the question was, whether these counter demands should be paid out of the undisposed residue or out of the funds of the establishment. According to the view I have taken, the bequest was of the whole commercial capital employed at Laurens Court House. What that is, can only be ascertained by an account and settlement of the affairs of the concern; collecting the debts due to it, and paying those due by it. If there were a certain stated capital employed by the testator, and a surplus regarded as profits, I should think the debts ought to be paid out of the profits ; or, if these were not sufficient, out of the capital.
It is, therefore, ordered and decreed, that it be referred to the Commissioner to inquire of and report the residue of the estate of Samuel Todd, deceased, undisposed of by his will, in the hands of the defendant Samuel B. Lewers, and also what are the stock in trade, notes and book accounts, bequeathed by the said testator to his nephew, Samuel R. Todd. Costs to be paid out of the said undisposed residue.